UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETRIUS DEVON BURKS,

               Plaintiff,                Case No. 2:14-cv-13331
                                           Judge Stephen J. Murphy, III
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (DE 10) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's amended motion for

summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment

(DE 13), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Deatrius Devon Burks, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits (DIB)

and supplemental security income benefits (SSIB).  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

1

amended motion for summary judgment (DE 10), the Commissioner's cross

motion for summary judgment (DE 13) and the administrative record (DE 6).

When this action began, Plaintiff's was represented by attorney, Richard J.

Doud of the law firm of Davidson, Breen, Doud, Steele & Ferguson, P.C. (the

"Davidson firm").  During the pendency of this action, this case was temporarily

transferred to a three-judge panel for consideration of the Commissioner's request

for a global 60 day stay and the question of substitution of counsel in all pending

cases of attorney Richard J. Doud.  (*See* Text-Only Order dated 5/20/15 and

Administrative Order 15-AO-033.)  On June 9, 2015, the case was stayed.  (DE

16.)  On October 19, 2015, the panel concluded its work and transferred the case

back to the judge to whom the matter was originally assigned, indicating that it was

the responsibility of the originally assigned judge to determine when to lift the stay

in the case.  (*See* Text-Only Order dated 10/19/2015 and Administrative Order 15-

AO-045.)  This Court lifted the stay in this matter on November 3, 2015. (DE 17.)

As a result of the panel's work, the Davidson firm was directed to send

Plaintiff a letter indicating that no lawyers at that firm are permitted to represent

her in this case.  The letter was also to provide her with the names of other lawyers

who handle Social Security disability cases, as well as the State Bar of Michigan's

attorney referral telephone number.  Plaintiff was given 60 days from October 19,

2015 to retain a new lawyer or proceed without the assistance of counsel.  To date,

there is no indication that Plaintiff has retained alternate counsel.  On January 8, 2016, the Court issued a notice to inform Plaintiff that she could file a new motion for summary judgment or supplement the existing motion by informing the Court of her intention to do so on or before January 15, 2016.  The Court did not receive any notice from Plaintiff and will therefore proceed on the current briefing.

### A.    Background

Plaintiff filed her applications for DIB and SSIB on December 21, 2011, alleging that she has been disabled since December 1, 2009, at age 38.  (R. at 154-160, 161-167.)  Plaintiff alleges disability as a result of:  lupus, Achilles tendonitis, fibromyalgia, plantar fasciitis and tendonitis in both shoulders.  (R. at 199-209.) Plaintiff's applications were denied on March 19, 2012.  (R. at 74-83, 84, 85, 86-95.)

On April 17-18, 2012, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 105, 108-112.)  ALJ John Ransom held a hearing on May 9, 2013, at which Plaintiff was represented by attorney Aaron Lemmens and Vocational Expert (VE) Judith Katheryn Findora testified.  (R. at 57-73.)  On May 15, 2013, ALJ Ransom determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 41-56.)

3

Plaintiff requested review of the hearing decision. (R. at 39-40.) On June 25, 2014, the Appeals Council denied Plaintiff's request for review. (R. at 1-5.) Thus, ALJ Ransom's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on August 27, 2014, via attorney Richard Doud. (DE 1.)

### B.   Plaintiff's Medical History

Plaintiff alleges that he has been disabled since December 1, 2009. (*See* R. at 156, 161.) Approximately 478 pages of Plaintiff's medical records, spanning the period of June 16, 2009 through March 11, 2013, were available to ALJ Ransom. R. at 237-714 (Exhibits 1F-26F; *see also* R. at 54-56). In addition, the record contains documents from the University of Michigan Health System dated December 14, 2013 through February 24, 2014 (R. at 13-36), as well as a March 24, 2014 letter from Todd A. Sandrock, D.O., of Flint Orthopedic Associates, P.C., to James Brown, M.D. (R. at 37-38.)

Although Plaintiff's medical records will be discussed in detail as necessary below, I particularly note pertinent records cited by the ALJ in his decision and by the Plaintiff in her brief:

- During June and July 2010, Plaintiff received speech therapy at Genesys Therapy Services. She was discharged on July 7, 2010, "secondary to consistent lack of attendance." (R. at 262-270.)

- On September 2, 2010, Plaintiff was examined by Ali Karrar, M.D., for an initial evaluation of joint pain and tenderness, "mostly located in the ankle bilateral, elbow bilateral, fingers bilateral, hand bilateral, hip bilateral, knee, [multiple] joints of the upper and lower extremities, low back and neck." Plaintiff described her pain as aching and sharp, as well as constant. Dr. Karrar's impressions included rheumatoid arthritis (RA), fibromyalgia, systemic lupus erythematosus (SLE), and hypothyroidism. (R. at 514-516.)

- Plaintiff again saw Dr. Karrar on October 6, 2010, who noted pain elicited from multiple tender point sites. Dr. Karrar's impressions included fibromyalgia and SLE. (R. at 517-518.)

- On November 17, 2010, Plaintiff again saw Dr. Karrar. As to the right shoulder, he noted "[m]ovements are painful with flexion beyond degrees, extension beyond degrees, abduction beyond degrees and adduction beyond degrees. On palpation, tenderness is noted in the genohumeral joint." Dr. Karrar diagnosed Plaintiff with myalgia and myositis not otherwise specified, SLE and rotator cuff syndrome *et al.* (R. at 519-521.)

- On December 3, 2010, Plaintiff was evaluated at Hurley Medical Center Rehabilitation Services, as she had been diagnosed with bilateral Achilles tendonitis, as well as plantar fasciitis. The subjective findings noted, among other things, that Plaintiff has had Achilles tendonitis, left worse than right, for years and that Plaintiff was also developing right plantar fasciitis and/or a right heel spur. (R. at 342-348.) Plaintiff was re-assessed on December 30, 2010. (R. at 349.)

- On January 13, 2011, Plaintiff again saw Dr. Karrar. He diagnosed Plaintiff with SLE, rotator cuff syndrome et al. and fibromyalgia/fibrositis. (R. at 522-524.)

- On March 3, 2011, Plaintiff was seen by James Brown, M.D., who noted Plaintiff's complaints of "exacerbation of diffuse pain in muscles and joints . . . ." The diagnoses appear to have

included SLE/fibromyalgia, plantar fasciitis and gastroesophageal reflux disease (GERD).  (R. at 593.)

- On December 20, 2011, Plaintiff was again seen by Dr. James Brown, who noted continuing joint pain.  Dr. Brown's diagnoses appear to have included fibromyalgia, lupus erythematosus, chronic rotator cuff tear, chronic pain, Achilles tendonitis and GERD.  (R. at 586.)

- On March 6 and March 26, 2012, Plaintiff saw David Taylor, D.P.M., whose impressions included bilateral plantar fasciitis, fibromyalgia and/or RA and possible medial calcaneal neuritis. (R. at 697-698.)  During the earlier visit, which was to follow up on plantar fasciitis, Dr. Taylor noted pain in both heels, as well as swelling and pain to touch.  (R. at 698.)

- On March 7, 2012 and April 2, 2012, Plaintiff again saw Dr. Karrar, who diagnosed RA, SLE, "rotator cuff syndrome et al," and fibromyalgia/fibrositis.  (R. at 558-561, 562-565.)  Among other things, Dr. Karrar's April 2, 2012 notes indicated that Plaintiff's condition was, "Over all stable."  (R. at 564.)

(*See* R. at 47-49, DE 10 at 10-11.)

### C.    Hearing Testimony (May 9, 2013)

#### 1.    Plaintiff's Testimony

Plaintiff testified at the May 9, 2013 hearing.  (R. at 60-70.)  At the time of the hearing, Plaintiff was 42 years of age and weighed 235 pounds, although her normal weight was 180, 200.  She attributed the weight gain to steroids.  (R. at 67.) Plaintiff testified that she is divorced, and her three children (ages 12, 15 and 20) live with her in a house.  (R. at 68.)  She graduated from high school, and the last time she worked was in 2010, following vocal cord surgery.  (R. at 68-69.)  She

had been working as an assistant teacher at a preschool – a paraprofessional.  (R. at 69.)  She finally stopped working, because she "couldn't take the pain too much longer."  (R. at 70.)

Plaintiff additionally testified about impairments involving her shoulders, arthritis, plantar fasciitis and fibromyalgia.  (R. at 60-62.) [1]  For example, she stated she cannot reach too far above her head or reach out too far, because her shoulders and wrists give out on her.  (R. at 60.)  She also testified that her arthritis causes "[s]harp pain, some numbness, and I can barely walk on my feet at times[,]" and that the pain from her plantar fasciitis is constant.  (R. at 61.)  As for her hands, Plaintiff testified that she experiences tingling, and her fingers get stiff, such that she has to "take [her] fingers and unfold them."  (R. at 66-67.)  She can write about five or six sentences.  (R. at 67.)

She also explained that the side effects from her medications include not sleeping, hair falling out and dizzy spells.  (R. at 62-63.)  She further testified that she spends approximately 80-85 percent of the day lying down, while her children are in school, because her body aches or she gets dizzy.  (R. at 63.)  According to Plaintiff, she can sit for 20-30 minutes and stand for 10-15 minutes; also, she can walk half of a city block before needing to sit down.  (R. at 65.)  She can

---

[1] The ALJ questioned Plaintiff regarding "mention in the medical record that you also have arthritis[,]" and Plaintiff explained it was all through her body.  (R. at 61.)  Here, I note that arthritis is not one of the disabilities Plaintiff alleged on her application; however, the application does list lupus and fibromyalgia.  (R. at 200.)

comfortably lift "[a]bout a 5-pound bag of sugar, or a 10-pound.  That's it."  (R. at 65-66.)

### 2.    Vocational Expert Testimony

VE Judith Katheryn Findora testified as to four (4) hypotheticals.  (R. at 70-72.)  First, when asked to assume an individual of 42 years of age with Plaintiff's education and past work, her alleged limitations and impairments, and the credibility of her testimony, the VE testified that such an individual would not be able to perform any of Plaintiff's past work or any other sedentary or light work, because she would need at least a seated position, she was unable to use her hands or to walk for any extended period of time, and she lays down 80 percent of the day.  (R. at 70-71.)  Second, the VE was asked to assume such an individual could perform sedentary work with the following restrictions:

> . . . she would need a sit/stand option at will; with no repetitive bending, twisting, turning, pushing, pulling, reaching, torquing, gripping, or grasping; occasional crawling, squatting, kneeling, and stair-climbing; no air or vibrating tools; no working around unprotected heights or moving machinery; and no repetitive foot controls.

The VE testified that such an individual could perform jobs as a credit and account clerk, an information clerk and an administrative clerk.  (R. at 71.)

Upon examination by Plaintiff's counsel, the VE testified that if such an individual, due to impairments or a combination of impairments, or doctors' visits, would be absent from work two or more days a month on a continued, ongoing

basis, neither the indicated jobs nor any other jobs would exist.  (R. at 71-72.)

Finally, the VE provided the same testimony when asked to assume this individual

would have to take additional breaks above and beyond the normal work breaks

and lunches, about two extra breaks, 15 minutes apiece.   (R. at 72.)

D.     **The Administrative Decision[2]**

ALJ Ransom rendered his decision on May 15, 2013.  (R. at 41-56.)  At Step

1, the ALJ found that Plaintiff has not engaged in any substantial gainful activity

since December 1, 2009, the alleged onset date.  (R. at 46.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis (RA), lupus erythematosus, fibromyalgia, plantar fasciitis, shoulder pain, and a mitral valve disorder.  (R. at 47.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 47.)

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work, except with restrictions of a sit/stand option at will, no repetitive bending, twisting, turning, pushing, pulling, gripping, grasping, reaching or torquing. Further limitations include occasional crawling, squatting, kneeling and stair climbing, no air or vibrating tools, no unprotected heights or working around moving machinery, and no repetitive use of foot controls. (R. at 47-49.)  Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work.  (R. at 49-50.)

At Step 5, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the unskilled sedentary jobs of credit clerk, information clerk and administrative clerk.  (R. at 50-51.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

11

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In her motion for summary judgment, Plaintiff sets forth an overriding statement of error that "[t]he Commissioner erred as a matter of law in assessing Deatrius Burks's credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray Deatrius Burks's impairments."  (DE 10 at 6-15.)  This is the verbatim statement of error repeatedly propounded by Plaintiff's counsel in numerous other cases filed in this District, apparently without taking into account the factual and procedural history of each unique adjudication.  *See, e.g., Henderson v. Comm'r of Soc. Sec.*, No. 13-13225, 2014 WL 3529727, *4 (E.D.

Mich. June 19, 2014) (Grand, M.J.), *report and recommendation adopted*, 2014 WL 3529441 (E.D. Mich. July 16, 2014) (Berg, J.).

More accurately, Plaintiff asserts that the ALJ erred by improperly discounting her credibility and failing to properly evaluate the medical records of evidence (DE 10 at 10-11, 14), which, in turn, led to an improper hypothetical to the VE that did not accurately portray Plaintiff's impairments (*Id*. at 11-12.)  In addition, she briefly mentions the treating source rule, but does not explain how the ALJ erred in this regard.  (*Id*. at 12-14.)  She also attempts a Step 5 argument, alleging that "the Commissioner failed to satisfy this burden of proof . . . ." (*Id*. at 1 ¶ 3, 8-9). The Commissioner opposes Plaintiff's motion, specifically asserting that "[t]he ALJ properly assessed Plaintiff's credibility."  (DE 13 at 14-18.)

Plaintiff has been put in an unfortunate situation by her former counsel (Richard J. Doud), who, among other significant shortcomings in his briefing, twice refers to Plaintiff by the wrong name, presumably that of another client, including in the opening line of the motion.  (DE 10 at 1, 5.)  Also, on at least four occasions, counsel makes use of masculine pronouns or modifiers, such as "he" and "his," for this female claimant.  (DE 10 at 5, 14-15.)  As noted above, due to myriad issues, her counsel of record and his law firm were removed from this case (and all Social Security appeals in the Eastern District of Michigan).  Plaintiff did not take the opportunity to retain new counsel and chose not to re-file or

supplement the current briefing, despite this Court's invitation to do so. (DE 20.)

Therefore, the Court will limit its consideration to those matters arguably presented

by Plaintiff's motion (DE 10), even if, as discussed below, the briefing on those

matters is inadequate, and to a consideration of the administrative record for any

obvious errors in the ALJ's conclusions. *See Brinkley v. Comm'r of Soc. Sec.*, No.

14-13560, 2015 WL 1637598, at *2-3 (E.D. Mich. Apr. 13, 2015) (Michelson, J.,

adopting report and recommendation of Patti, M.J.) (where Plaintiff is *pro se*, the

Court may "review[] the administrative record for obvious errors in order to affirm

the Commissioner's conclusions . . . ." (internal citations and quotations omitted)).

The Undersigned will address each of the parties' arguments in turn.

### 1. Substantial evidence supports the ALJ's credibility determination.

In his Step 4 RFC determination, ALJ Ransom considered Plaintiff's hearing

testimony, several medical records and Plaintiff's January 11, 2012 function report.

(*See* R. at 47-49.) ALJ Ransom concluded that Plaintiff's "allegations of totally

disabling physical impairments resulting in an inability to engage in any type of

sustained work activity [are] not fully credible[,]" and "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely

credible for the reasons explained in this decision." (R. at 49.)

Plaintiff takes issue with the ALJ's credibility determination (*see* DE 10 at

6-12, 14-15), in particular citing 20 C.F.R. § 404.1520 ("Evaluation of disability in

general.") and 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain.").

Plaintiff contends "[h]er testimony is backed up by the medical evidence and to indicate it is not and that her testimony [is] not credible is clearly in error."  (DE 10 at 10.)  In support of this argument, Plaintiff expressly cites certain records by Dr. Taylor, Dr. Brown, ophthalmologist Daniel J. Ryan, M.D. (R. at 602), Dr. Karrar, and the December 2010 records from Hurley Medical Center Rehabilitation Services, ultimately contending that her testimony about her severe medical impairments is "backed up by medical documentation . . . ."  (DE 10 at 10-11.) According to Plaintiff, she "would only be capable of engaging in substantial gainful activity only [sic] by enduring great pain . . . ."  (DE 10 at 14.)

Still, the Court should conclude that substantial evidence supports the ALJ's credibility determination.  "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).  "[A]n administrative law judge's credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F.App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.,* 402 F.App'x 109, 112–13 (6th Cir. 2010)). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported

15

by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ appropriately evaluated Plaintiff's symptoms. As to the Plaintiff's testimony that her medications caused loss of hair and dizzy spells, the ALJ pointed to Dr. Karrar's March 7, 2012 notes from a follow up visit for right shoulder and bilateral knee pain, which report that Plaintiff's joint pain is intermittent and "gets better with medication." The ALJ also stated, "Claimant did not testify that prescribed medication was ineffective when taken as directed. Even if medication caused dizziness, the record has failed to establish a severity which would preclude all work activity." (*See* R. at 48, 63, 558-561.)

Next, the ALJ referred to, among other things, Plaintiff's testimony about lying down "[a]t least about 80, 85 percent of the day, while my children are in school." Here, the ALJ observed that "[t]he record does not indicate that any treating source has recommended napping or resting most waking hours[,]" and also cited to Plaintiff's January 11, 2012 function report, with references to Plaintiff's answers about meals, house and yard work, getting around, shopping and social activities. (R. at 48, 63; *see also* R. at 221-222.)

Then, the ALJ stated:

Claimant's allegations of totally disabling physical impairments resulting in an inability to engage in any type of sustained work activity [are] not fully credible. Further, the objective findings of record do not support the degree of her subjective complaints. The

16

record does not indicate that any treating or examining physician has placed specific exertional limitations upon her activities of daily living.[3]  None has stated she is precluded from all gainful work activity.  Although she underwent physical therapy in June and July 2010, the record does not indicate any treatment at a chronic pain clinic or prescription of a TENS [transcutaneous electrical nerve stimulation] unit. The record does not indicate that claimant has been advised to undergo a surgical procedure for any condition, including for shoulder, plantar fasciitis or mitral valve disorders.  She advised Dr. Karrar that her leg and arm pain was only intermittent and the physician disclosed she was able to bear weight and had a normal gait.

(R. at 49.)[4]  The ALJ further noted that Plaintiff reported no residual limitations

following her vocal cord surgery and also noted that the record has not established

ongoing treatment for her alleged dizzy spells.  *Id*.

Although the above analysis does not contain express citations, it is clear the

ALJ was referring to the June and July 2010 speech therapy records from Genesys

Therapy Services (R. at 262-270).[5]  It is also likely the ALJ was referring to Dr.

---

[3] "[A] lack of physical restrictions constitutes substantial evidence for a finding of non-disability."  *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989) (citing *Nunn v. Bowen,* 828 F.2d 1140, 1145 (6th Cir.1987)).

[4] *See McKenzie v. Comm'r, Soc. Sec. Admin.*, No. 99-3400, 2000 WL 687680, *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."), *Byberg v. Comm'r of Soc. Sec.*, No. 12-10158, 2013 WL 1278397, at *9 (E.D. Mich. Mar. 11, 2013) (Hluchaniuk, M.J.), *report and recommendation adopted*, No. 12-10158, 2013 WL 1278500 (E.D. Mich. Mar. 27, 2013) (Zatkoff, J.) ("Their records show very conservative routine treatment, including occasional injections, mild pain medication, and use of a TENS unit.")

[5] The Court further notes the December 2010 assessments at Hurley Medical Center Rehabilitation Services, specifically the December 30, 2010 re-assessment which indicated improvement in foot pain, and range of motion (ROM) but did not indicate improvement in tolerance for standing/ambulation.  (R. at 342-349.)

Karrar's September 2, 2010, January 13, 2011, March 7, 2012 and April 2, 2012

notes, because the ALJ discussed these notes earlier in the Step 4 RFC discussion.

(*See* R. at 48.)  While the earlier two visits note constant pain, the latter two visits

note intermittent joint pain.  (*Compare* R. at 514, 522, 558 & 562.)  Moreover,

while notes from the earliest visit indicate "antalgic gait-minimal[,]" the notes

from the three other visits indicate, among other things, an ability to bear weight

on both ankles and/or normal gait.  (R. at 515, 523, 559 & 563; *see also* R. at 403-

405, 411-413, and 446-449.)

Furthermore, the ALJ highlighted other substantial, objective evidence from

the medical record which contradicted Plaintiff's subjective complaints,

specifically noting the following with reference to Dr. Karrar's March 7, 2012

notes:

> . . . claimant was able to sit comfortably on the examination table
> without difficulty or evidence of pain.  She had full range of motion
> without pain of the neck.  She reported pain with range of motion
> movement of the right shoulder and left elbow.  Tinnel's and Phalen's
> signs were negative in the hands.  There was no decreased range of
> motion, weakness or numbness of the hands.  Examination of the
> spine was normal with no limitation in range of motion. There were
> no negative findings in the ankles and she was able to bear weight on
> both ankles and had a normal gait.

(R. at 48.)  This appears to be a fair characterization of Dr. Karrar's March 7, 2012

objective findings.  (*See* R. at 446-449, 558-561.)

---

Therefore, within his Step 4 RFC determination, the ALJ considered Plaintiff's testimony, various medical records, and the January 11, 2012 function report (R. at 47-49), as well as several of the factors set forth in 20 C.F.R. § 404.1529(c), such as Plaintiff's daily activities, medication, and treatment other than medication. 20 C.F.R. § 404.1529(c)(i),(iv),(v). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility determination here is supported by substantial evidence.

At this juncture, I direct the Court's attention to the "legal argument" portion of Plaintiff's brief. (DE 10 at 6-15.) Plaintiff makes several express references to the medical record; however, these are mostly lists of diagnoses or impressions (such as fibromyalgia, lupus / systemic lupus erythematosus (SLE), rheumatoid arthritis (RA) / arthritis, plantar fasciitis bilateral / right heel spur, Achilles tendonitis, and chronic rotator cuff tear / rotator cuff syndrome), many of which the ALJ acknowledged in some form at Step 2 as severe impairments (rheumatoid arthritis, lupus erythematosus, fibromyalgia, plantar fasciitis, shoulder pain and a mitral valve disorder). (*See* DE 10 at 10-11, R. at 47.). In addition, the ALJ acknowledged Dr. Karrar's diagnoses of rotator cuff syndrome at Step 4. (R. at 48, 560, 564.) Also, while the ALJ's decision does not mention Achilles tendonitis,

19

the ALJ's Step 4 discussion acknowledged Plaintiff's testimony about plantar fasciitis causing sharp foot pain (R. at 47, 61) and Dr. Taylor's March 6, 2012 notes indicating "possible medial calcaneal neuritis." (R. at 48, 698.)[6] The same would apply to the ALJ's failure to expressly mention the right heel spur indicated in the December 3, 2010 Hurley Medical Center Rehabilitation notes or to expressly mention the swelling in her heels indicated in Dr. Taylor's March 6, 2012 notes. (*See* DE 10 at 11, R. 342, R. at 698.) Plaintiff's argument that her testimony regarding her severe medical impairments is "backed up" by the medical evidence merely takes issue with the ALJ's Step 4 RFC determination. (*See* DE 10 at 10-11.) The fact is, her testimony about sharp foot pain and plantar fasciitis was considered and accommodated in the RFC's prohibition against "repetitive use of foot controls[,]" and requirement of "a sit/stand option at will[.]" (R. at 47, 49, 61.)

To be sure, Plaintiff also cites documentation of pain, tenderness and positive trigger points noted in various records from Drs. Ryan, Karrar, Taylor and Brown. (*See* DE 10 at 11.) However, the ALJ's decision gave credit to much of her testimony, expressly stating:

---

[6] Contrary to the ALJ's citation to Dr. Taylor's March 26, 2012 notes, it is actually Dr. Taylor's March 6, 2012 notes which document this impression. (*Compare* R. at 48, 697, 698.) Nonetheless, "Achilles tendon" and "calcaneal tendon" are synonyms. Stedman's Medical Dictionary 901240.

- Her allegations with respect to the ***shoulders*** would be accommodated by no use of air or vibrating tools and no repetitive pushing, pulling, gripping, grasping, reaching or torquing.

. . .

- Claimant has been diagnosed with fibromyalgia and lupus erythematosus. A reduced range of sedentary work with the restrictions cited in her residual functional capacity would accommodate the alleged ***joint discomfort***.

- Her allegations of a ***knee giving out on occasional*** [sic] when climbing stairs would be accommodated by no repetitive use of foot controls and a sit/stand option at will.

- The ***mitral valve disorder*** would be accommodated by a reduced range of sedentary exertion work.

(R. at 49 (emphasis added).) Thus, the ALJ acknowledged these allegations and complaints, provided specific limitations to address them, and, therefore, appropriately evaluated Plaintiff's symptoms.

Finally, although the Commissioner acknowledges Dr. Taylor's March 6, 2012 note regarding treatment *options*, including surgery (*see* DE 13 at 17 n.5, R. at 698), I note the ALJ's unrefuted comment that "[t]he record does not indicate that claimant has been *advised* to undergo a surgical procedure for any condition, including for shoulder, plantar fasciitis or mitral valve disorders." (R. at 49) (emphasis added). Also, I note Dr. Sandrock's March 24, 2014 letter to Dr. Brown – not available to the ALJ but available to the Appeals Council - which states: "She will *consider her options* and get back in touch with this office *if she desires*

to pursue surgery." (R. at 38) (emphasis added). However, Plaintiff's motion does not take issue with the ALJ's comment about surgery, nor does it cite Dr. Sandrock's letter, nor does it suggest she ever chose or underwent surgery.

> **2.     Plaintiff does not independently challenge the *accuracy* of the hypotheticals posed to the VE.  Instead, she appears to challenge the ALJ's *adoption* of the VE's testimony as to the second hypothetical instead of *adopting* the VE's testimony as to the first, third or fourth hypotheticals.**

Plaintiff discusses the shift in the burden of proof to the Commissioner, which occurs at Step 5, claiming that "each element of the [second] hypothetical *does not accurately describe* Deatrius Burks in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*See* DE 10 at 10; *see also* DE 10 at 12.)

The second hypothetical, while not verbatim, is substantially similar to the phrasing of the ALJ's Step 4 RFC  determination, and it was in response to the second hypothetical to which the VE testified that the credit/account clerk, information clerk and administrative clerk positions could be performed. (*Compare* R. at 47, R. at 71.)

In reality, Plaintiff seems to be challenging the ALJ's assessment of her credibility in his Step 4 RFC determination, a point at which Plaintiff has the burden, rather than the hypothetical itself.  As the Commissioner suggests, the Court interprets Plaintiff's statements as challenging the ALJ's failure to adopt the

22

absence or extra breaks restrictions which were the subject of Plaintiff's counsel's (third and fourth) hypotheticals to the VE.  (R. at 71-72, DE 13 at 18 n.6.) Furthermore, to the extent Plaintiff is challenging the ALJ's assessment of Plaintiff's testimony about sitting, use of her hands, ability to walk or laying down when formulating the second hypothetical, the ALJ's RFC determination contains the restrictions of a sit/stand option at will, and the ALJ's Step IV determination discussed Dr. Karrar's March 7, 2012 notes, which observed, in part: "Both the hands show no evidence of decreased range of motion, joint abnormality, weakness, numbness or other significant abnormal findings."  (*See* R. at 47-48, 70-71.)  Moreover, as noted above, the ALJ discounted Plaintiff's testimony about laying down.  (R. at 48, 63.)

In essence, Plaintiff seeks to re-challenge the ALJ's negative credibility determination through the back door by re-inserting subjective complaints which were properly discounted into a re-formed RFC, thus substituting her own version of the VE's hypothetical as the operative one.  However, for the reasons stated above, once the ALJ's credibility determination is affirmed, as I suggest it should be, the ALJ's Step 4 RFC determination - supported by the VE's testimony in response to a like-phrased hypothetical - must necessarily be affirmed as well.

### 3.    Plaintiff does not properly challenge the ALJ's assessment of records from a treating physician.

Plaintiff's pending December 5, 2014 amended motion for summary judgment was filed by attorney Richard Doud.  (DE 10.)  On January 8, 2016, this Court denied the April 2015 motions for substitution of counsel, which had been filed by attorney James Smith, and removed attorney Doud as Plaintiff's counsel. (DEs 14, 15 & 20.)

As the Commissioner acknowledges, attorney Doud's work product has been called into question.  (*See* DE 13 at 7-8, *Fielder v. Comm'r of Soc. Sec.,* No. 13-10325, 2014 WL 1207865, at *1 n.1 (E.D. Mich. Mar. 24, 2014) (Rosen, C.J., adopting report and recommendation of Majzoub, M.J.) ("nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel."), *see also Armstrong v. Comm'r of Soc. Sec.*, 95 F. Supp. 3d 1049, 1054 (E.D. Mich. 2015) (Lawson, J., adopting in part report and recommendation of Majzoub, M.J.) ("Because the conduct in this case appears to be a pattern of activity that has emerged in several of Mr. Doud's cases in this district, the Court believes that the better course is to refer the matter to the Chief Judge to determine whether disciplinary or remedial measures should be taken."), *Swadling v. Comm'r of Soc. Sec.*, No. 14-10251, 2015 WL 1511048, at *1 (E.D. Mich. Mar. 24, 2015) (Berg, J., adopting report and recommendation of Majzoub, M.J.) ("Unfortunately, Attorney Doud has paid no attention to the Court's warning

24

to improve his work product. He continues to file motions containing the same kind of sub-standard advocacy that led to the criticism in the *Fielder* case.").

Here, too, the Court expresses concern with the organization and quality of Plaintiff's brief. Suffice it to say that the Court interprets Plaintiff's brief as challenging only the ALJ's assessment of Plaintiff's credibility. (*See* DE 10 at 6-12, 14-15.) Although Plaintiff's brief makes several references to regulations and case law regarding treating source opinions, this section of Plaintiff's brief does not contain any references to the medical record. (*See* DE 10 at 12-14.) This leaves the Court to assume Plaintiff is challenging the ALJ's assessment of Drs. Karrar, Ryan, Brown and/or Taylor's opinions, as mentioned in the credibility portion of Plaintiff's brief.

Where Plaintiff is represented by counsel, it is not the Court's job to make arguments on her behalf. During October 2015, Plaintiff was given an opportunity to retain new counsel. (*See* DE 19.) Moreover, the Court's January 8, 2016 order, while terminating attorneys Doud and Smith as Plaintiff's counsel, provided Plaintiff with an opportunity to file an amended motion for summary judgment or to supplement the current motion for summary judgment (DE 20), and Plaintiff did not do so. Therefore, Plaintiff apparently having chosen to rely on the current briefing, the Court will not address any argument that the ALJ improperly assessed the opinions of Plaintiff's treating physician(s).

### G.    Conclusion

In sum, the Undersigned concludes that substantial evidence supports the

ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the

Court **DENY** Plaintiff's amended motion for summary judgment (DE 10),

**GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 17, 2016          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 17, 2016, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti

27